IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SHELIA BROWN | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:17-cv-393-RSP |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § § | |

**MEMORANDUM RULING**

On March 10, 2016, Administrative Law Judge Charlotte A. Wright issued a decision finding that Petitioner Shelia Brown was not disabled within the meaning of the Social Security Act from June 1, 2012 through the date of the decision. Ms. Brown, who was 45 with a high school equivalency certificate at that time, was found to be suffering from severe impairments consisting of carpal tunnel syndrome, status post right release, morbid obesity, degenerative joint disease, and degenerative disc disease. These impairments resulted in restrictions on her ability to work, and she had not engaged in any substantial gainful activity since at least June 1, 2012. Her past relevant work included home healthcare provider, restaurant shift manager, driver and waitress. She was not able to return to that type of work.

After reviewing the medical records and receiving the testimony at the November 19, 2015 video hearing, at which Petitioner was represented by her attorney, Stephanie Spaniel, the ALJ determined that Petitioner had the residual functional capacity to perform light work as defined in the Social Security regulations--which involves lifting and/or carrying 20 pounds occasionally and 10 pounds frequently—except that she is limited to two hours each of standing and walking in an

eight-hour workday, occasionally climbing ramps and stairs, no ladders, ropes, or scaffolds, and only occasional balancing, stooping, kneeling, crouching, and crawling.

Based on the testimony of a vocational expert witness, Dale Thomas, the ALJ determined that Petitioner could perform the requirements of certain light, unskilled jobs that exist in substantial numbers in the national economy, such as mail clerk and marking clerk. This finding resulted in the determination that Petitioner was not entitled to either supplemental security income or disability insurance benefits. Petitioner appealed this finding to the Appeals Council, which denied review on March 17, 2017. Petitioner timely filed this action for judicial review seeking remand of the case for award of benefits.

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. See *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir.1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983)). In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen,* 798 F.2d 818, 823 (5th Cir.1986).

Petitioner raises two issues on this appeal:

> 1. The ALJ's decision that Plaintiff can perform light work activity is not supported by substantial evidence because [s]he omitted several severe impairments, non-exertional limitations, and mental impairments.
>
> 2. Plaintiff has new and material evidence in support of her inability to work, which was not considered.

*Issue No. 1:*

Petitioner argues that the ALJ failed to consider certain conditions that are reflected in her medical records. Her brief lists 27 entries from the medical records that include "diagnoses, tests, and MRIs." Dkt. 14 at 6-7. Petitioner complains that the residual functional capacity determined by the ALJ fails to account for these conditions. However, it is only those impairments that qualify as "severe," meaning that they have more than a minimal effect on the ability to work, which must be accommodated in the RFC. Petitioner argues that each of the conditions would "prohibit work at the light exertional level" but does not cite any restrictions imposed or suggested by the medical providers of record. *Id.*

For instance, Petitioner points to evidence of ulnar neuropathy, and the carpal tunnel syndrome with which its treatment is associated. The ALJ discussed this condition, found it to be a severe impairment, but noted that the most recent evaluation (the same month as the hearing) found her condition to be "stable, with no loss of function reported." Tr. at 29, 349. Petitioner argues that since the ALJ found the carpal tunnel syndrome to be a severe impairment, it must cause "a significant limitation on performing basic work activities." Dkt. No. 14 at 13. This is simply not accurate. In the Fifth Circuit it is well settled that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it

would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

She next refers to her chronic knee pain, citing records of examinations in 2014 showing she complained of pain and stiffness in both knees. Tr. at 285, 389, 398. However, none of those records include any restrictions on her activities, or findings that she is unable to perform the requirements of light work. The ALJ points to the notation by Dr. Hoover, discussed further below, that she walked with a normal gait. Tr. 29. It is also noteworthy that Dr. Price, who Petitioner described in her testimony as the only doctor she sees regularly, did not even mention knee pain on the list of 18 conditions for which he was following her at the time of her hearing in November 2015. Tr. at 349-350. Similar observations can be made about Petitioner's right shoulder pain, hip pain, back pain, sleep apnea, asthma, obesity and the like. None of these conditions are shown by the medical records to impose restrictions on her ability to perform the requirements of light work. Moreover, as pointed out by the Commissioner, the ALJ thoroughly reviewed the entirety of the medical records, and her light work RFC is supported by the state agency medical consultants.

Petitioner also complains in this issue that the ALJ discredited her testimony about many of the complaints outlined above. The Commissioner has long conceded that while the ALJ has great discretion in weighing the evidence and determining credibility, there are parameters governing those findings. For instance, in Social Security Ruling 96-7, the Commissioner clarified that:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must

contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

A review of the ALJ's opinion, especially at pages 6 to 7, shows that the ALJ did perform the required analysis of the record and give the specific reasons for her credibility determination. The Court has also reviewed the transcript of Petitioner's testimony at the hearing. The Court finds that the record supports the ALJ's finding that the Petitioner's complaints of disabling symptoms were not fully credible.

Petitioner also raises the issue of mental impairments. A mental evaluation was performed by Dr. James Hoover, who noted that she "presented moderate psychological impairment in the ability to reason and to make occupational, personal, and social adjustments." Tr. at 297. This opinion, if adopted by the ALJ, would render her mental impairment "severe" and require that it be accommodated in the RFC. However, the ALJ gave "little weight" to Dr. Hoover's opinion, finding that it "contradicts the objective medical evidence developed by Dr. Hoover, including a completely normal mental status exam and essentially intact activities of daily living." He further found that Dr. Hoover's opinion was outweighed by the evaluations of Dr. Ritch and Dr. Turner, the state agency psychological consultants, who found Petitioner's mental impairments to be nonsevere. Tr. 30. After a careful review of Dr. Hoover's report, the Court agrees with the assessment of the ALJ. All of the findings in the report suggest a minimal impairment. He notes that she has adequately managed the symptoms of her longstanding PTSD and attributes her current complaints (supporting her application for benefits) to her bereavement of her mother and the fact that she stopped using methamphetamine about a year before. Given the entirely subjective nature of his analysis, and the lack of support in any of the testing, the lesser weight assigned by

the ALJ is reasonable. It is also worth noting that Dr. Hoover was not a treating physician. He saw Petitioner only once and for an evaluation, rather than treatment. It is the role of the ALJ to weigh competing medical evidence. The reports of the state agency medical consultants can constitute substantial evidence to support the ALJ's finding. *Bordelon v. Astrue*, 281 Fed. App'x 418, 422 (5th Cir. 2008). On this record, the findings of Drs. Ritch and Turner constitute substantial evidence supporting the ALJ's finding of no severe mental impairments.

*Issue No. 2*:

Petitioner's second issue concerns medical records that were submitted to the Appeals Council together with the appeal of the ALJ's decision. The records concern a sleep study performed in February 2016 finding sleep apnea, an x-ray of the left knee taken on March 28, 2016, and a CT scan of the liver taken in September 2015.

The issue presented to the Court by evidence offered to the Appeals Council after the ALJ's decision is whether it "creates considerable uncertainty" about the ALJ's findings—in other words, whether it undermines confidence in the result below. *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016). The Commissioner argues that the Court should not consider the March 28 knee x-ray because it was taken 18 days after the ALJ's decision. Admittedly, the x-ray would not be "material" evidence if it did not pertain to the contested time period, which ended with the ALJ's March 10 decision. However, all evidence suggests that the x-ray represents a chronic condition that existed during the contested period, not something than arose acutely afterward. In any event, the x-ray adds nothing material to the evidence that was before the ALJ. The x-ray shows that Petitioner has degenerative joint disease, which is one of the severe impairments noted by the ALJ.

The x-ray does not show that Petitioner had any particular limitations which were not accommodated by the ALJ's light work RFC.

Similarly, the CT scan showing abnormal liver morphology does not indicate that Petitioner has any particular functional limitations.[1]  Not does the sleep study showing sleep apnea.  These are all diagnostic materials that could support the findings of a medical provider, but they do not establish any particular limitations in and of themselves.  Accordingly, the new evidence presented does not demonstrate a lack of substantial evidence supporting the finding of the ALJ.

*Conclusion:*

Having found that the record supports the finding of the ALJ, the decision of the Commissioner is affirmed and this action will be dismissed.

**SIGNED this 13th day of July, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[1] Furthermore, as noted by the Commissioner, the September 11, 2015 CT Scan appears to have been part of the original record reviewed by the ALJ.  Tr. at 459.